## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## PANAMA CITY DIVISION

**TIMOTHY KYLE ABNEY,**

      **Petitioner,**

**v.**                                **Case No. 5:22cv258-TKW/MAF**

**RICKY D. DIXON, Secretary,**
**Florida Department of Corrections,**

      **Respondent.**
_____/

## REPORT AND RECOMMENDATION

On November 2, 2022, Petitioner Timothy Kyle Abney, a state inmate proceeding pro se at the time, submitted for mailing a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. ECF No. 1. He also submitted a supporting memorandum. ECF No. 3. On January 31, 2023, Respondent filed an answer, with exhibits, ECF No. 10, including two exhibits filed under seal, ECF Nos. 11, 12. Petitioner has not filed a reply, although he had the opportunity to do so. *See* ECF Nos. 6, 12, 14, 15.

The matter was referred to the undersigned United States Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636 and Northern District of Florida Local Rule 72.2(B). After careful consideration, the undersigned has determined no evidentiary hearing is required for the

disposition of this matter.   *See* Rule 8(a), R. Gov. § 2254 Cases.   For the reasons stated herein, the filings before the Court show Petitioner is not entitled to federal habeas relief and this § 2254 petition should be denied.

### Procedural Background

In Bay County Circuit Court case number 2017-CF-693, the State of Florida charged Petitioner Timothy Kyle Abney with two counts of lewd or lascivious molestation by a person 18 years of age or older and a victim less than 12 years of age, in violation of section 800.04(5)(a)-(b), Florida Statutes, with the first count involving the older victim between October 4, 2011, and October 3, 2012, and the second count involving the younger victim between June 1, 2012, and June 20, 2014.   Ex. A at 68; Ex. J at 12, Ex. U at 17.[1] Abney proceeded to trial on March 29, 2018, Ex. B, and he testified in his defense, *id*. at 137-41, 175-98.   The jury found him guilty as charged on both counts.   *Id*. at 241-42; Ex. A at 108-09 (verdict).   On May 14, 2018, the trial court adjudicated him guilty and sentenced him as a sexual predator to concurrent sentences of 25 years in prison, followed by 2 years of sex offender community control and sex offender probation for life.   Ex. A at 115-22 (Judgment and Sentence); 237-40 (transcript of sentencing hearing).

---

[1]Hereinafter, all citations to the state court record, "Ex. –," refer to exhibits submitted with Respondent's answer, ECF No. 10.   Exhibits B and J have been filed under seal.   *See* ECF Nos. 11, 12.

Abney appealed his judgment and sentence to the First District Court of Appeal (First DCA), assigned case number 1D18-2180, and his counsel filed an initial brief, Ex. C.   The State filed an answer, Ex. D, and Abney's counsel filed a reply, Ex. E.   The First DCA per curiam affirmed the case without a written opinion on April 2, 2019.   Ex. F; Abney v. State, 267 So. 3d 364 (Fla. 1st DCA 2019).   Abney did not seek additional appellate review. *See* ECF No. 10 at 12.

On September 23, 2019, Abney filed a pro se motion for post-conviction relief pursuant to Florida Rule of Criminal Procedure 3.850.   Ex. G.   The state post-conviction trial court struck the motion as facially insufficient by order entered January 22, 2020, and allowed Abney time to file an amended motion.   Ex. H.   Abney timely filed an amended Rule 3.850 motion.   Ex. I.   In a Confidential Order rendered September 2, 2020, the state post-conviction trial court summarily denied relief.   Ex. J.   Abney appealed to the First DCA, assigned case number 1D20-2837, and filed an initial brief, Ex. K.   The State filed an answer brief, Ex. L, and Abney filed a reply, Ex. M.   On April 30, 2021, the First DCA issued a written opinion affirming the denial of postconviction relief.   Ex. N; Abney v. State, 317 So. 3d 1253 (Fla. 1st DCA 2021).   The mandate issued May 28, 2021.   Ex. N. Abney sought discretionary review in the Florida Supreme Court, assigned

case number SC21-837, Ex. O, and on August 20, 2021, that court denied review, Ex. P.

In the meantime, on December 26, 2019, Abney filed a pro se petition alleging ineffective assistance of appellate counsel in the First DCA, assigned case number 1D19-4696.   Ex. Q.   The State filed a response, Ex. R, and Abney filed a reply, Ex. S.   On April 16, 2021, the court denied the petition without a written opinion.   Ex. T; Abney v. State, 314 So. 3d 1262 (Fla. 1st DCA 2021).

Also in the meantime, on December 18, 2020, Abney filed a pro se motion to correct illegal sentence in the state trial court, pursuant to Florida Rule of Criminal Procedure 3.800(a).   Ex. U at 9-14 (exclusive of attachments).   By order rendered February 15, 2021, the court denied relief. *Id*. at 35-38 (exclusive of attachments).   Abney appealed to the First DCA, assigned case number 1D21-0864, and he filed an initial brief.   Ex. V.   The State filed an answer brief, Ex. W, and Abney filed a reply brief, Ex. X.   The First DCA per curiam affirmed the case without a written opinion on December 30, 2021, and the mandate issue January 27, 2022.   Ex. Y.

As indicated above, on November 2, 2022, Abney filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.   ECF No. 1.   He raises five grounds, four of which allege ineffective assistance of counsel (IAC):

(1) **Trial Court Error – Exclusion of Impeachment Evidence**: "[T]he trial court erred when it would not allow [Abney] to introduce impeachment evidence (DCF Report) that contradicted a key State witness' trial testimony (Mr. Davis)." *Id*. at 16.

(2) **IAC – DCF Report**: "Defense Counsel was ineffective for failing to file a pre-trial Notice of Intent to Introduce as Evidence the 2013 DCF Report that Includes Hearsay Statements of the Child Victim." *Id*. at 20.

(3) **IAC – Victims Testifying at Trial**: "Defense Counsel was ineffective for failing to object to the trial court's failure to conduct the required hearing and express its specific findings of fact supporting allowing both alleged victims to testify at trial concerning prior hearsay statements they made to the DCF Investigators." *Id*. at 23.

(4) **IAC – No Motion for Statement of Particulars**: "Defense counsel was ineffective for failing to file a motion requesting a Statement of Particulars to narrow the timeframe during which the alleged offenses occurred." *Id*. at 26.

(5) **IAC – Failure to Call Exculpatory Witnesses**: "Defense Counsel was ineffective for failing to call exculpatory witnesses DCF Investigator Deonia Russell and Mississippi Family Protection Specialist Jennifer Helper[2] at trial." *Id*. at 31.

Respondent filed an answer, with exhibits, ECF No. 10, including two exhibits (B and J) filed under seal, ECF Nos. 11, 12. Petitioner has not filed a reply, although he had the opportunity to do so. *See* ECF Nos. 6, 12, 14, 15.

---

2 Petitioner Abney refers to one of the witnesses' last names spelled as "Helper," ECF No. 1 at 31, as does the First DCA in its opinion affirming the denial of post-conviction relief, <u>Abney v. State</u>, 317 So. 3d 1253, 1254 (Fla. 1st DCA 2021). The state post-conviction trial court spelled this witness's last name as "Hepler." Ex. J at 8. The correct spelling is not clear from the record provided in this case.

## Analysis

Pursuant to 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA), federal courts may grant habeas corpus relief for persons in state custody.   In particular, section 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).   *See, e.g.,* Cullen v. Pinholster, 563 U.S. 170, 180-83 (2011); Gill v. Mecusker, 633 F.3d 1272, 1287-88 (11th Cir. 2011).   "This is a 'difficult to meet' and 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt.'"   Cullen, 563 U.S. at 181 (quoting Harrington v. Richter, 562 U.S. 86, 102 (2011), and Woodford v. Visciotti, 537 U.S. 19, 24 (2002)).   This Court's review "is limited to the record that was before the state court that adjudicated the claim on the merits."   *Id*.

For IAC claims, the United States Supreme Court has adopted a two-part test:

> First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

Strickland v. Washington, 466 U.S. 668, 687 (1984).   For ineffectiveness, a "defendant must show that counsel's performance fell below an objective standard of reasonableness."   *Id.* at 688.   For prejudice, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."   *Id.* at 694.   "A reasonable probability is a probability sufficient to undermine confidence in the outcome."   *Id.*   For this Court's purposes, "[t]he question 'is not whether a federal court believes the state court's determination' under the Strickland standard 'was incorrect but whether that determination was unreasonable – a substantially higher threshold.'" Knowles v. Mirzayance, 556 U.S. 111, 123 (2009) (quoting Schriro v. Landrigan, 550 U.S. 465, 473 (2007)).   "And, because the Strickland standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard."   *Id.*

It is a "doubly deferential judicial review that applies to a <u>Strickland</u> claim evaluated under the § 2254(d)(1) standard."   *Id.*

### <u>Ground 1</u>:   Trial Court Error – Exclusion of Impeachment Evidence

In his first ground, Petitioner Abney asserts the state trial court violated his Sixth Amendment right to a fair trial by preventing defense counsel from introducing as impeachment evidence a prior inconsistent statement made by the victim's father in a DCF report.   ECF No. 1 at 16; ECF No. 3 at 6. Abney indicates this ground was raised as the first point in his direct appeal. ECF No. 1 at 16; ECF No. 3 at 6.   As Respondent indicates, ECF No. 10 at 25, Abney did not exhaust this ground as a federal claim.

The first point in Abney's direct appeal argued "the Trial Court erred when it would not allow [Abney] to introduce an impeachment statement which was inconsistent with that witnesses [sic] [the father of the victims] testimony."   Ex. C at 1.   The victims' father testified during the defense presentation at trial.   Ex. B at 149.   During defense counsel's direct examination of the victims' father, counsel asked about a prior investigation in another state, where the victims' father "made a report that they were being abused and [he] was told that [he] didn't have evidence" because "[a]t the time the girls were not willing to stand up and say anything in front of

anybody else," and that case was closed after a couple of months. *Id*. at
146; *see id*. at 143-48. One of his daughters had told him that Abney
"touched her in the bathroom and stuck, tried to stick his tongue in her
mouth." *Id*. at 149. His other daughter "just told [him] that [Abney] abused
her but she wouldn't ever give [him] details." *Id*. Defense counsel then
asked, "And do you recall talking to a Florida DCF employee named
Anjanetta Bryant?" *Id*. The prosecutor asked to approach the bench and
asserted, "It looks like counsel is trying to impeach his own witness and there
is a prohibition against calling a witness simply to impeach him." *Id*. The
trial judge overruled this objection and directed defense counsel that "it
needs to be clear what you're asking him." *Id*. at 150.

Defense counsel continued his direct examination of the victims' father:

Q   Did any investigator or police officer ever accuse you of
failing to report this alleged sexual abuse?

A   No, sir.

Q   But you did talk to them about the allegation?

A   Yes, sir.

Q   And did you believe it was true at the time?

A   I believed it was true then and I believe it now. If I may say
so, my kids when they told me it didn't happen, she looked like
she was more scared that she was, it looked to me like she was

lying about it didn't happen.

Q   Okay.   Now at that point they had come to live with you, right?
A   Yeah, [one daughter] stayed with me for awhile but [the other daughter] only stayed with me for a short time.

Q   Any particular reason why?

A   We have always made it to where it's completely up to them to who they stayed with, we have left that open.   We didn't want to force either one of them to stay with one parent or the other.

Q   When that allegation was made did you get with [the victims' mother] about, hey, maybe they should come here and live with me?

A   Yes, sir, but it was still the kids' choice and –

Q   Okay, so, but you had faith that they were telling you the truth?

A   Yes, sir.

Q   And that was not disturbing to you that they were living under the same roof with the person that you believe –

A   Yes, it was disturbing.

. . . .

Q   And they [the victims] remained living over there, right?

A   Yes, sir.   I was told they couldn't go on assumptions alone, just on my word, that they would have to be able to testify that it happened.

Q    Did you, back in 2012 did you tell the Florida DCF

investigator that [one of the victims] came to you and told you that Tim [Abney] had done something sexual to her?

A   That he had abused her.

Q   Sexually or physically?

A   I just said abused her.

Q   You didn't say something sexual?

A   I said it could have been, I wasn't sure.   I didn't say exactly because still to this day I don't know the extent of how far everything went.   They talk to their mother more than they have me about the situation.

Q   So they closed that investigation on August 17, 2012, does that sound right?

A   It's close to that, I've got the paperwork at home.

Q   And did you tell the DCF agent this, that [one of the victims] had told you that within the last, had come to you at the end of last year, stating that Tim had done something sexual to her?   Is that –

A   I believe I told him that but like I said my memory going back that far back is, from the seizures is hasty.

Q   Last year, that would be 2011, right?

A   Yes, sir.

Q   So do you think that that's when [she] told you?

A   It was around a year ago or a year and-a-half is when she comes all the way out.

Q   Prior to this 2012 –

A   When we started seeing the counselors and everything.

Q   Okay.   So the abuse that [she] was alleging, she was alleging that it occurred pre 2012?

A   Yes, sir.

Q   But you're saying that your impression is that she didn't disclose that, I mean, she disclosed that to you, right?

A   She said something happened but she never, she never gave me complete details of what happened.

Q   Like [the other victim] did?

A   [The other victim], she didn't give me all the details either, she just told me that he touched her and she never told me all of the way, she never would talk to me all the way about what happened.

Q   Okay.   Did you make DCF aware of, that [the first victim] had also made allegations in addition to –

A   I told them that they both had made allegations and just for the record I told them that my older son had made allegations that he was being abused.   And, not sexually, he never mentioned anything sexually, so.   And they said that if they're not willing to go to trial and they're not willing to say it their self then there is nothing they can do, just by me coming and telling them.

Q   Okay.   And so they told you that that's why they were closing the investigation?

A   They said they needed them to be able to tell them their self that it's happening.   So I mean, I didn't live in the same

household when they were with them, so there is no way I could have known everything that was happening.

Q   Let's go to 2013 since we're talking about physical abuse. There is another investigation that opens up in 2013.   Do you remember that?

A   I don't remember that.

Q   It was two back to back.   You spoke with investigators in both, right?

A   Yes, sir.
. . . .

Q   What was the physical abuse that was alleged in that case?

A   He told me, which that was my older son, he had been hitting him across the back with a belt.

Q   Now did the children make any disclosures to you about Tim beating them?

A   They said he was hitting them, yeah.

*Id*. at 150-55.   At this point, defense counsel approached the bench and asked the judge for permission to treat the witness "as a hostile witness at this point because he's denying things that he's said."   *Id*. at 155.   The judge agreed "this witness is hostile" and "this witness has a difficult time remembering answers, remembering what happened," and allowed defense counsel to "ask him if he said things previously to investigators and you have to live with the answer that he gives."   *Id*.   Defense counsel responded,

"That's fine, that's all I want to do."   *Id*.   The following then occurred on the

record, with counsel remaining at the bench:

> MR. OVERSTREET [prosecutor]:   The issue is that he can't lead the witness, he's not cross examining him.
>
> MS. ROBERSON [defense counsel]:   He's having a hard time.
>
> MR. OVERSTREET:   He has to say what did you say, not did you say this.
>
> MR. PHILLIPS [defense counsel]:   But if he says, if I say did the children ever disclose anything to you as far as physical abuse and he says no and he's saying in here he says yes –
>
> THE COURT:   Mr. Phillips, reality is you got to live with his answer unless you have another witness who can, who you can put on the stand to say he did tell.   You can't use that report.
>
> MR. PHILLIPS:   I'm assuming the state is not extending their stipulation.
>
> MR. OVERSTREET:   The issue is that this witness has testified numerous times that he has a really bad memory and reality is that you called him as a witness.   And you're under the auspices of direct rather than cross.
>
> THE COURT:   The witness is not hostile, you may not lead the witness.   You can ask him questions about what he said to whomever he said it to and at the end of the day the answer that he gives is the answer that he gives.   If you want to rebut that you can't do it with that report.

*Id*. at 155-56.   Defense counsel continued and shortly concluded his direct

examination of the victims' father:

Q   As far as you know was this case closed as far as the physical abuse allegation?
A   As far as I know it was closed.

Q   And you're not aware of DCF coming in and removing Mr. Abney from the house or –

A   [The victims' mother] called me and told me that he was removed from the house.

Q   By her or by who?

A   She didn't give me details about why he was removed.   She said he raised his hand to her and he was removed from the house and she kicked him out.

MR. PHILLIPS:   That's all I have.

*Id*. at 157.

The stipulation defense counsel mentioned appears to reference a discussion on the record just prior to the start of the trial, regarding anticipated testimony from one of the DCF investigators, Anjanetta Bryant:

THE COURT:   We have our jury ready so are there any preliminary matters we need to address before we get started?

MR. OVERSTREET:   I think as the only matter we have is that we have a stipulation as to possible impeachment information. However, I've spoken to the witnesses and they plan to admit the prior recantation so [one victim] will admit her prior recantation. [The other victim] says that she doesn't recall if she recanted or not but I think the mother indicated that she recanted to her per the report so that, I think that takes care of the issue.

MR. PHILLIPS:   Are we not stipulating then or –

MR. OVERSTREET:  No, no, I'm saying we are in case they don't.   But I anticipate they're going to admit so there won't be an issue.

THE COURT:   You had evidence to suggest both had previously recanted?

MR. PHILLIPS:   Yes, and there's some additional impeachment that may be required but it may not be as simple as if they both recant –

THE COURT:  Let's stay focused on what the evidence is that he would like to introduce with respect to the issue, he can make that decision if he wants to do it during the trial irrespective of what the witnesses say or the mother says.   But is there a stipulation as to the evidence that he would like to introduce if he chooses to?

MR. OVERSTREET:   I think he can impeach them with anything that he has to impeach them with, I agree with that.   Obviously we can't enter DCF records or CPT records or anything like that but I don't think there is going to be a problem with the impeachment and I've agreed with him that if there is another witness, I think one of the investigators we said we could get by phone that we could do that as well, if it comes to extrinsic impeachment.

THE COURT:  Why don't we do this, when you're ready to, if you think you need to use it when you're ready to use it just ask for a sidebar and we will address it at the time, okay, and just have ready for me to look at whatever you want me to make a decision about.   And my understanding is this witness that you're going to try to direct examination by telephone, assuming that plays out, that you both stipulated that the person that answers the phone is the person who she claims to be and we don't need to have a notary present?

MR. OVERSTREET:    Yes, sir, because she's testified numerous times either at the office or by telephone so we're both aware of who she is.

THE COURT:    What is her name.

MR. PHILLIPS:    Anjanetta Bryant.    And just, I can give you an idea of what I would be using.    There is some dispute about whether the mother [was] in the home or whether Mr. Abney were working and that has to do with what kind of access he had to the children and how often he had access to the children without other adults around.    I anticipate that, well, if she, if the mother testifies consistently with some of her statements she could testify that she's working double shifts, 14 hours and our contention is that she was unemployed at the time and that she was at home the entire time.    So I want to be able to get in things like that that were discussed between [the mother], . . . the biological father of the victims, or the victims themselves with this investigator who spoke with them personally.    And she's done the report for 2012, when they investigated the allegations in 2012.

MR. OVERSTREET:    I don't know how this is going to play out, what she's going to say.    I know that she said that she was working two jobs at one point, the Kangaroo, because that's how she met Mr. Abney, and worked at Family Dollar Club, LaVela, she worked at a number of places.

THE COURT:    I don't know that we're making a very good record here either.    Candidly, this is supposed to be managed in a written motion in limine in advance of trial.    So, you know, if we need to talk about it at a time when you want to put it in context and I can look at what you have and we can have a meaningful discussion about it[,] I'll be happy but I can't, I'm not sure we're making any progress here.

MR. PHILLIPS:    I thought we were just stipulating simply that if I'm using her for impeachment based on something that she's

written in her report then the state would stipulate to that as long as I'm impeaching something that someone has testified to here today.

MR. OVERSTREET:   In all candor, obviously he can ask her didn't you tell so and so –

THE COURT:   If we're talking about a prior out of court inconsistent statement for purposes of impeachment[,] I don't think you need anybody's permission to do that.   You would not be able to put in the report, it can't be substantive evidence unless you have some other exception to the hearsay rule.   But if we're talking about impeaching a witness who has taken the stand through other witnesses['] testimony and prior inconsistent statements[,] you don't need a stipulation for that, that's just the law, that's the rule of evidence.

MR. OVERSTREET:   I guess the only concern we had prior to was if we wouldn't have the witness available to back up what he said when he's impeaching her, to extrinsically impeach her later in his case in chief.   I think that was the concern and I can tell Mr. Phillips like I did before I have no issue with if we have to have a written stipulation that that did, that was said without the witness, that's fine.   So like I said, I'm not trying to say that it didn't happen and if he wants to put proof that it did or was said to somebody else then I'm stipulating that that was said to someone else, per the reports.

THE COURT:   **So if this lady gets on the stand on the telephone and testifies to certain prior inconsistent statements that were made but doesn't testify to all the prior inconsistent statements that were made that were evident in her report, you would stipulate that all prior inconsistent statements that were made either via her testimony today or that were reported in her report would be admissible at least in some form or fashion that the jury could hear**.

MR. OVERSTREET:   **Yes, sir, that's exactly right**.

MR. PHILLIPS:   **Thank you.   That's all I want**.

Ex. B at 3-8 (bold emphasis added).

During Anjanetta Bryant's telephonic testimony, which occurred after the father's testimony, the following transpired on direct examination by defense counsel:

Q   You also talked to the father . . .?

A   Yes.

Q   I may have already asked you this but he told you that both children had recanted?

A   He told me that [one victim] had recanted.

Q   Okay.   So if he's saying now that neither of his daughters ever recanted around him then he's mistaken, is that fair?

A   (inaudible).

Q   I said if [the victims' father] is maintaining now that neither of his daughters recanted the allegations that they had made –

MR. OVERSTREET:   Object to –

THE COURT:   Sustained.   Ask another question.

BY MR. PHILLIPS

Q   You did speak with [the victims' father]?

A   Yes.

Q    Did he express any sort of doubt as to the allegations?

MR. OVERSTREET:    Objection.

THE COURT:    Sustained.    Don't answer the question.    Ask another question.

BY MR. PHILLIPS

Q    Did you ask [the victims' father] about the allegations?

A    Yes.

Q    What was his position?

MR. OVERSTREET:    Objection.

THE COURT:    Sustained.

MR. PHILLIPS:    Can we approach?    It's a prior inconsistent statement.

<u>AT THE BENCH</u>

THE COURT:    What was the statement that was made by the dad today that will be inconsistent with what you're about to tell me?

MR. PHILLIPS:    That he's always believed them, that he's never had any doubt.

MS. ROBERSON:    And he said in his statement in 2012 the same thing that Mama did and that is that the kids were mad because they were breaking up and he –

THE COURT:    Don't tell me all the background information, I got all that.

MS. ROBERSON:   That's what he said.

THE COURT:   Do you agree that that's what he said today on the stand, Mr. Overstreet?

MR. OVERSTREET:   He said he believed his kids, he didn't say always, he said I believe my kids.

THE COURT:   What did he say in the statement that you want to ask her?

MR. PHILLIPS:   He says –

MS. ROBERSON:   End of last year attempted something sexual but her story changed and she finally admitted she was not telling the truth, stating she said all these things so she could come live with him.

MR. OVERSTREET:   But that's [one of the victims], not what his take is on it.   He's saying that's what [one of the victims] told him.

MS. ROBERSON:   That's what we're talking about.

THE COURT:   No, no, no.   You're asking him, you're asking for him saying, to say something to the effect like I didn't believe them.

MS. ROBERSON:   What was his belief?

THE COURT:   That's what he just related to her what she said was the reason why she recanted.   That's not inconsistent with what he just said.   So your request is – your objection is sustained.   Move on.

Ex. B at 207-10.   Defense counsel asked only one additional question, "Did

either [the victims' father] or [the victims' mother] express any concerns

about Timothy Abney being in the house with their daughters when you spoke with them?," to which the witness answered, "No." *Id*. at 210. The prosecutor asked a few questions on cross-examination. *Id*. at 210-11. The defense then rested. *Id*. at 211.

As evidenced by the above trial record excerpts, at no point did defense counsel reference any federal law or constitutional provision in support of any argument that he should be allowed to use the DCF report. In the direct appeal, the initial brief cites only Florida case law and statutes, with the exception of a single quotation from Davis v. Alaska, 415 U.S. 308, 316 (1974), for this general legal proposition:

> Cross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested. Subject always to the broad discretion of a trial judge to preclude repetitive and unduly harassing interrogation, the cross-examiner is not only permitted to delve into the witness' story to test the witness' perceptions and memory, but the cross-examiner has traditionally been allowed to impeach, i.e., discredit, the witness.

Davis, 415 U.S. at 316; *see* Ex. C at 34-39. Because Abney did not alert the state courts to the federal ground he now asserts, this ground was not fairly presented as a federal claim and is unexhausted. *See* Baldwin v. Reese, 541 U.S. 27, 32 (2004) (holding that "ordinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a

petition or a brief (or similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so"); Preston v. Sec'y, Fla. Dep't of Corr., 785 F.3d 449, 457-58 (11th Cir. 2015) ("The crux of the exhaustion requirement is simply that the petitioner must have put the state court on notice that he intended to raise a federal claim."); *see also* O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999); Duncan v. Henry, 513 U.S. 364, 365-66 (1995); Picard v. Connor, 404 U.S. 270, 278 (1971).

This ground is procedurally defaulted because Abney cannot obtain another direct appeal.   *See* O'Sullivan, 526 U.S. at 845.   He has not alleged or shown cause for the default and actual prejudice, nor has he alleged or shown actual innocence or a fundamental miscarriage of justice.   *See id*. at 848-49; *see, e.g.*, Henderson v. Campbell, 353 F.3d 880, 892 (11th Cir. 2003) (explaining cause and prejudice, and correction of fundamental miscarriage of justice); Smith v. Jones, 256 F.3d 1135, 1138 (11th Cir. 2001) ("[I]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of just exception is applicable.").

Even assuming Abney did exhaust this ground, it does not warrant habeas relief.   He essentially raises a claim of state law error, specifically a state trial court evidentiary ruling.   "[F]ederal habeas corpus relief does not lie for errors of state law."   Lewis v. Jeffers, 497 U.S. 764, 780 (1990); *see* Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) (explaining that errors that do not infringe on defendant's constitutional rights provide no basis for federal habeas corpus relief).   "A state's interpretation of its own laws or rules provides no basis for federal habeas corpus relief, since no question of a constitutional nature is involved."   Carrizales v. Wainwright, 699 F.2d 1053, 1055 (11th Cir. 1983); *accord, e.g.*, McCullough v. Singletary, 967 F.2d 530, 535 (11th Cir. 1992).   "Indeed, the general rule is that a federal court will not review a trial court's actions with respect to the admission of evidence." Shaw v. Boney, 695 F.2d 528, 530 (11th Cir. 1983).   Moreover, "[a] state evidentiary violation in and of itself does not support habeas corpus relief" and "[b]efore such relief may be granted, the violation must rise to the level of a denial of 'fundamental fairness.'" *Id.*; *see* Jacobs v. Singletary, 952 F.2d 1282, 1296 (11th Cir. 1992) ("We review state court evidentiary rulings on a petition for habeas corpus to determine only 'whether the error, if any, was of such magnitude as to deny petitioner his right to a fair trial.' . . . Erroneously

admitted evidence deprives a defendant of fundamental fairness only if it was a 'crucial, critical, highly significant factor' in the [defendant's] conviction." (citations omitted)).

In this case, the state trial court did not abuse its discretion or otherwise err in not allowing defense counsel to impeach the victims' father with the statement made to the DCF child protective investigator.    As the trial court explained, the father's statement made to the investigator, relaying one of the victims' stated reason for recanting, was not inconsistent with the father's testimony that he believed the victims, that he "believed it was true then and [he] believe[s] it now."    *See* Ex. B at 209 (Trial Court:   "That's what he just related to her what she said was the reason why she recanted.   That's not inconsistent with what he just said.").

Notably, the state post-conviction trial court denied an IAC claim concerning defense counsel's failure to impeach the victims' father.   Ex. J at 9-10.   In its opinion affirming the denial of relief, the First DCA explained:

> Appellant also averred that trial counsel failed to properly impeach the victim's father with prior inconsistent statements. When the victim's father was interviewed during the 2012 investigation, he indicated that the victims "made up the allegations."   At trial, he testified that he believed the allegations when he first heard them and still believed them.   He argued that the outcome at trial could have been different had counsel confronted the witness with his prior statements.

Appellant's claim is without merit and entirely speculative. "Postconviction relief cannot be based on speculation or possibility."  Maharaj v. State, 778 So. 2d 944, 951 (Fla. 2000). The victims' father was not a key witness at trial and his testimony was largely cumulative of other testimony and any impeachment would have been of a minimal value.   The jury had already heard about recantations from Sgt. Voyles' testimony and even the [sic] one of the victims.   Further, it is not enough that an error may have a conceivable effect, the effect must show a likelihood to undermine confidence in the outcome to satisfy Strickland v. Washington, 466 U.S. 668 . . . (1984).

Abney, 317 So. 3d at 1254.

Petitioner Abney has not shown that the state courts' rejection of this ground involved an unreasonable application of clearly established federal law or that it was based on an unreasonable determination of the facts.   See 28 U.S.C. § 2254(d)(1)-(2).   Accordingly, if considered on the merits, this ground should be denied.

### Ground 2:   IAC – DCF Report
### &
### Ground 3:   IAC – Victims Testifying at Trial
### &
### Ground 4: IAC – No Motion for Statement of Particulars

In his second, third, and fourth grounds, Petitioner Abney asserts his trial counsel provided ineffective assistance in three instances: (1) "failing to file a pre-trial Notice of Intent to Introduce as Evidence the 2013 DCF Report that Includes Hearsay Statements of the Child Victims," ECF No. 1 at 20

(Ground 2); (2) "failing to object to the trial court's failure to conduct the required hearing and express its specific findings of fact supporting allowing both alleged victims to testify at trial concerning prior hearsay statements they made to the DCF Investigators," *id.* at 23 (Ground 3); and (3) "failing to file a motion requesting a Statement of Particulars to narrow the timeframe during which the alleged offenses occurred," *id.* at 26 (Ground 4).   Abney indicates he did not raise these claims in state court and asserts that, because he did not have post-conviction counsel, he should be excused from any procedural default, pursuant to <u>Martinez v. Ryan</u>, 566 U.S. 1 (2012). ECF No. 1 at 22, 25, 30.

As Abney recognizes, he did not exhaust these grounds in state court, and they are procedurally defaulted.   *See* <u>O'Sullivan</u>, 526 U.S. at 845. *See, e.g.*, <u>Henderson</u>, 353 F.3d at 892; <u>Smith</u>, 256 F.3d at 1138.   In <u>Martinez</u>, the U.S. Supreme Court held that "[w]here, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial, if in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective."   566 U.S. at 17.   "To overcome the default, a

prisoner must also demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit."   *Id*. at 14; *see* McKiver v. Sec'y, Fla. Dep't of Corr., 991 F.3d 1357, 1368 (11th Cir. 2021) ("[T]o show that an underlying ineffective-assistance-of-counsel claim is 'substantial,' a petitioner must establish that 'jurists of reason would find it debatable.'" (quoting Hittson v. GDCP Warden, 759 F.3d 1210, 1269-70 (11th Cir. 2014))).   Respondent asserts the underlying IAC claims asserted by Abney are not substantial.   ECF No. 10 at 37, 41, 44.

As to the first two IAC instances (Grounds 2 and 3), Abney's arguments focus on section 90.803(23), Florida Statutes, and assert counsel should have (1) filed pre-trial Notice of Intent to introduce the 2013 DCF Report that includes the child victims' hearsay recantations, *see* ECF No. 1 at 20, ECF No. 3 at 9-10; and (2) objected to the trial court failure to hold "the required hearing express its specific findings of fact supporting allowing both alleged victims to testify at trial concerning prior hearsay statements they made to the DCF Investigators," ECF No. 1 at 23, *see* ECF No. 3 at 11.   Section 90.803(23), Florida Statutes (2017), provides:

**(23) Hearsay exception; statement of child victim.--**

(a) Unless the source of information or the method or circumstances by which the statement is reported indicates a lack of trustworthiness, an out-of-court statement made by a child victim with a physical, mental, emotional, or developmental age of 16 or less describing any act of child abuse or neglect, any act of sexual abuse against a child, the offense of child abuse, the offense of aggravated child abuse, or any offense involving an unlawful sexual act, contact, intrusion, or penetration performed in the presence of, with, by, or on the declarant child, not otherwise admissible, is admissible in evidence in any civil or criminal proceeding if:

  1. The court finds in a hearing conducted outside the presence of the jury that the time, content, and circumstances of the statement provide sufficient safeguards of reliability. In making its determination, the court may consider the mental and physical age and maturity of the child, the nature and duration of the abuse or offense, the relationship of the child to the offender, the reliability of the assertion, the reliability of the child victim, and any other factor deemed appropriate; and

  2. The child either:

    a. Testifies; or

    b. Is unavailable as a witness, provided that there is other corroborative evidence of the abuse or offense. Unavailability shall include a finding by the court that the child's participation in the trial or proceeding would result in a substantial likelihood of severe emotional or mental harm, in addition to findings pursuant to s. 90.804(1).

(b) In a criminal action, the defendant shall be notified no later than 10 days before trial that a statement which qualifies as a hearsay exception pursuant to this subsection will be offered as

evidence at trial. The notice shall include a written statement of the content of the child's statement, the time at which the statement was made, the circumstances surrounding the statement which indicate its reliability, and such other particulars as necessary to provide full disclosure of the statement.

(c) The court shall make specific findings of fact, on the record, as to the basis for its ruling under this subsection.

Respondent quotes the statute, with the first sentence of subsection (b) italicized, and asserts "[t]he section cannot be invoked by the defendant to have the trial court rule on reliability of the recantations or repudiations by child victims."   ECF No. 10 at 39.   Other than quoting the statute as described, Respondent cites no authority for this assertion.   *See id*.

To the extent Abney asserts this statute would apply to allow him to introduce evidence of out-of-court recantations by the victims, his argument lacks merit.   Although it appears the statute can be used by a defendant to offer child hearsay statements as described in the statute, the statute cannot be used to admit recantations.   According to Ehrhardt's <u>Florida Evidence</u>:

> Although the statements of a child are normally offered by the state, they are equally admissible under § 90.803(23) if offered by the defendant.   This interpretation is similar to that given by extrinsic evidence of other crimes offered under § 90.404(2) which is admissible regardless of whether it is offered by the prosecution or defense.   See Rivera v. State, 561 So. 2d 536 (Fla. 1990) (Accused may offer "reverse Williams rule evidence.").

Charles W. Ehrhardt, <u>Florida Evidence</u>, § 803.23, at 1222 n.1 (2021 ed.). Subsection (a) specifically states it applies to "an out-of-court statement made by a child victim with a physical, mental, emotional, or developmental age of 16 or less describing any act of child abuse or neglect, any act of sexual abuse against a child, the offense of child abuse, the offense of aggravated child abuse, or any offense involving an unlawful sexual act, contact, intrusion, or penetration performed in the presence of, with, by, or on the declarant child."   § 90.803(23)(a), Fla. Stat.   It does not state that it applies to recantations.   "The plain language of . . . section 90.803(23) is not unclear or ambiguous."   <u>Frazier v. State</u>, 250 So. 3d 794, 797 (Fla. 1st DCA 2018).   *See* Ehrhardt, <u>Florida Evidence</u>, § 803.23, at 1223 ("Only statements that describe an act of child abuse, sexual abuse, or any other offense involving an unlawful sexual act, contact, intrusion, or penetration performed in the presence of, with, by, or on the declarant child are included under the exception.").

Abney has not shown defense counsel performed deficiently, much less presented substantial IAC claims for (1) not filing a pre-trial Notice of Intent to introduce the 2013 DCF Report that includes the child victims' hearsay statements of recantation or (2) not objecting to the trial court's

failure to hold "the required hearing express its specific findings of fact supporting allowing both alleged victims to testify at trial concerning prior hearsay statements they made to the DCF Investigators," pursuant to section 90.803(23). The prosecution did not introduce any hearsay statements of the victims at trial pursuant to this statute. *See* Ex. B; ECF No. 10 at 39-40. Both victims testified in person at trial about Abney's actions giving rise to the charges. *See* Ex. B at 64-73, 104; 111-17, 135-36. Defense counsel extensively cross-examined the victims, including questions about their previous statements and recantations. *See* Ex. B at 79-104; 118-35. *Cf., e.g.*, Frazier v. State, 250 So. 3d at 797 ("When the Legislature enacted section 90.803, it balanced the need to admit child hearsay statements against the defendant's constitutional right to confront the witnesses against him and his constitutional due process rights. . . . Even though the Legislature balanced the defendant's rights, admission of the child hearsay statements under section 90.803(23) can still violate a defendant's constitutional rights. A violation of a defendant's constitutional right to confront witnesses can occur if the trial court admits the child's hearsay statements that are testimonial in nature, the child declarant does not testify, and the defendant has not had a prior opportunity to cross-examine the child

declarant.   <u>Crawford v. Washington</u>, 541 U.S. 36, 68 . . . (2004).   Here, the appellant's constitutional right to confront the witnesses against him is not in issue since the child victim testified at trial.").

As to the third IAC instance (Ground 4), Abney asserts counsel should have filed a motion "requesting a Statement of Particulars to narrow the timeframe during which the alleged offenses occurred."   ECF No. 1 at 26. The fourth amended information, on which he proceeded to trial, charged him with two counts of lewd or lascivious molestation by a person 18 years of age or older and a victim less than 12 years of age, in violation of section 800.04(5)(a)-(b), Florida Statutes, with the first count involving one victim between October 4, 2011, and October 3, 2012, and the second count involving another victim between June 1, 2012, and June 20, 2014.   Ex. A at 68; Ex. J at 12, Ex. U at 17.   Abney asserts defense counsel should have filed a motion requiring the State to reflect "the actual narrow date ranges for each charge," which he asserts is "only a three-month period between October 2, 2011 and December 31, 2011," for Count 1 and "only a six-month period between December 26, 2013 and June 30, 2014," for Count 2.   ECF No. 1 at 28.   Abney asserts, without such narrowing of the timeframes at issue, he "was prejudiced in his ability to prepare an alibi defense against

these claims, and in his ability to impeach the witness's testimony at trial."
*Id*.

Abney has not shown deficient performance of defense counsel in not filing the motion he describes.   At the trial, the victims' mother testified that she met Abney in March 2011 and he moved into their residence in August 2011.   Ex. B at 27.   She testified that in August 2011, the victims were living with their father; the older victim returned to live with her in October 2011.
*Id*. at 28.   She testified that, at some point, the younger victim also returned to live with her, prior to all of them moving to a different residence in August 2013.   *Id*. at 29.

The victims' testimony at trial does not support Abney's argument for such narrowing of the time frames.   In particular, the older victim, the subject of the first count, testified that the abusive instances occurred "[s]ometime after [she] turned 11."   Ex. B at 64; *see id*. at 73.   This accounts for the one-year period in the charging document.   She further testified that it first happened during the daytime when her mother was at work.   *Id*. at 65; *see id*. at 72.   She testified to another incident that occurred at night, "[p]robably a couple of days" later.   *Id*. at 67.   A third incident happened "[p]robably a couple days, maybe a couple of weeks" later.   *Id*. at 69.   She thinks "it was

after Easter." *Id*.   She also testified that, now that she is older, she experiences time differently than when she was 11 years old.   *Id*. at 73.   In 2012, Easter fell on Sunday, April 8.   This is well after the narrowed time period urged by Abney of "only a three-month period between October 2, 2011 and December 31, 2011," for Count 1.

The younger victim, the subject of the second count, testified she met Abney sometime in 2011.   Ex. B at 109.   She testified Abney did not do anything inappropriate to her until after they moved to a different house. *See id*. at 110.   She testified that she "can't remember the year or anything but it was around, like around Christmas time" when the first incident occurred.   *Id*. at 110-11.   She testified to additional incidents.   *Id*. at 113, 116.   She testified that Abney touched her inappropriately "probably almost every day."   *Id*. at 116.   Thus, at best, it appears from this victim's testimony, together with that of her mother, the timeframe could have been narrowed on Count 2, to start August 2013 (when they moved to a different residence) instead of June 2012.   Abney points to nothing indicating the prosecution or defense knew these timeframes prior to trial.

Further, nothing indicates Abney was prejudiced by the timeframes as set forth in the fourth amended information.   As indicated above, defense

counsel extensively cross-examined the victims regarding their allegations, recantations, and timing.   *See* Ex. B at 79-104; 118-35.   Defense counsel also extensively cross-examined the State's only other witness, the victims' mother.   *See* Ex. B at 35-58.

Based on the foregoing, Petitioner Abney's three underlying IAC claims are not substantial and he has not shown prejudice.   *See* <u>Martinez</u>, 566 U.S. at 14; <u>McKiver</u>, 991 F.3d at 1368.   Accordingly, the procedural default of these three grounds should not be excused, and these grounds should be denied.

### <u>Ground 5</u>:   IAC – Failure to Call Exculpatory Witnesses

In his fifth ground, Petitioner Abney asserts his trial counsel provided ineffective assistance by "failing to call exculpatory witnesses DCF Investigator Deonia Russell and Mississippi Family Protection Specialist Jennifer Helper[] at trial."   ECF No. 1 at 31.   As both Petitioner and Respondent indicate, Abney raised this claim in the second ground of his amended Rule 3.850 motion.   Ex. I at 30-33; *see* ECF No. 1 at 31; ECF No. 10 at 52-53.   The state postconviction trial court denied the claim, making the following findings:

> In Ground 2, the Defendant alleges that he received ineffective assistance of counsel because his attorney failed to

call two exculpatory witnesses and failed to introduce exculpatory evidence. He first contends that counsel should have called Deonia Russell, an investigator with the Florida Department of Children and Families, as a witness to testify as to a lack of evidence of sexual abuse of the victims and the documentation of [the older victim's] prior admission to having falsified the allegations. Next, he argues that counsel should have called Jennifer Hepler, a family protection specialist from Mississippi, as a witness to testify as to [the older victim's] prior admission to having falsified the allegations. The Defendant claims that the testimony of these witnesses would have been useful to impeach the trial testimony of the victims. He also argues that counsel should have introduced into evidence the Offense Event Report created by Springfield Police Department Sergeant Russell Voyles, in which the officer notes the victims' recantation of the allegations. The Defendant claims that he was prejudiced by counsel's failure to present the testimony of the witnesses and the information from the Offense Event Report to the jury because it would have created reasonable doubt of his guilt and resulted in a different outcome at trial.

The Court finds that Ground 2 is due to be denied. Much of the alleged testimony from Ms. Russell – that the children denied sexual abuse by the Defendant in 2012, that [the older victim] recanted her original allegations, and that allegations of physical abuse had previously been made against the victims' father – would have been cumulative, as all such evidence was introduced by at least one other witness. (Ex. G at 31, 45, 57-58, 74, 80, 100, 103, 121, 148, 159, 167, 169-170, 181, 184-186, 193, 204, 206-207, 210.) [Ex. B at 31, 45, 57-58 (trial testimony of victims' mother); 74, 80, 100, 103 (trial testimony of older victim); 121 (trial testimony of younger victim); 148, 159 (trial testimony of victims' father); 167, 169-70 (trial testimony of Sgt. Voyles); 181, 184-86, 193 (trial testimony of Petitioner Abney); 204, 206-07, 210 (trial testimony of Anjanetta Bryant).] The alleged testimony from Ms. Hepler – that both victims had recanted their allegations – would have been cumulative, as all such evidence was introduced by at least one other witness and

was noted by defense counsel during her closing argument. (Ex. G at 31, 45, 74, 80, 103, 121, 148, 167, 169-170, 184-186, 193, 204, 206-207, 210, 232.)  [Ex. B at 31, 45 (trial testimony of victims' mother); 74, 80, 103 (trial testimony of older victim); 121 (trial testimony of younger victim); 148 (trial testimony of victims' father); 167, 169-70 (trial testimony of Sgt. Voyles); 184-86, 193 (trial testimony of Petitioner Abney); 204, 206-07, 210 (trial testimony of Anjanetta Bryant); 232 (defense closing argument).]  The alleged information in Sgt. Voyles's report – that both victims had recanted their allegations and that allegations of physical abuse had previously been made against the victims' father – would have been cumulative, as all such evidence was introduced by at least one witness.  (Ex. G at 31, 45, 74, 80, 103, 121, 148, 159, 167, 169-170, 181, 184-186, 193, 204, 206-207, 210.) [Ex. B at 31, 45 (trial testimony of victims' mother); 74, 80, 103 (trial testimony of older victim); 121 (trial testimony of younger victim); 148, 159 (trial testimony of victims' father); 167, 169-70 (trial testimony of Sgt. Voyles); 181, 184-86, 193 (trial testimony of Petitioner Abney); 204, 206-07, 210 (trial testimony of Anjanetta Bryant).]  Where the requested evidence is cumulative to that already presented, a claim that counsel was ineffective for failing to present such evidence is insufficient under <u>Strickland</u>.  <u>Downs v. State</u>, 740 So. 2d 506, 516 (Fla. 1999) (citing <u>Card v. State</u>, 497 So. 2d 1169, 1177 (Fla. 1986) ("We refuse to render counsel ineffective for failing to proffer testimony that would have been entirely cumulative.").  The only remaining allegation in this claim – that counsel should have called Ms. Russell as a witness to testify that there was no indication of sexual abuse in the present case – is equally meritless.  Given the nature of the claims that the Defendant touched but did not penetrate the victims' vaginas, one would not reasonably expect there to be any physical evidence of sexual abuse in the present case.  The Defendant has not and cannot demonstrate that he was prejudiced by counsel's failure to present testimony that there was no physical evidence of sexual abuse in the present case.  As a whole, the Defendant's claim that counsel should have introduced the above-listed "exculpatory" evidence undoubtedly fails to satisfy <u>Strickland</u>'s

requirement that the Defendant demonstrate both deficient performance and prejudice.  The Defendant was previously given an opportunity to amend this claim to comply with the requirements set forth in <u>Strickland</u> but has again failed to allege a facially sufficient claim of ineffective assistance of counsel. Accordingly, Ground 2 is due to be denied as facially insufficient.

Ex. J at 8-9.   Ex K 25-30

Abney challenged the denial of this claim in his initial brief filed in his appeal to the First DCA.   Ex. K at 25-30.   The First DCA issued a written opinion affirming the case.   Ex. N; <u>Abney v. State</u>, 317 So. 3d 1253 (Fla. 1st DCA 2021).   In particular, the court explained that Abney's defense counsel did not perform deficiently:

> In his amended motion for postconviction relief, Appellant claimed that trial counsel failed to call two witnesses, D. Russell and J. Helper, to testify.  He argued that the witnesses would have testified that the victims made similar allegations in an earlier investigation and later recanted and that, had counsel introduced evidence of the prior allegations, the jury would have had reasonable doubt.   The trial court denied the claim finding that the information would have been cumulative to other evidence presented at trial.

> Appellant's claim is meritless.   "Even if a witness was available to testify and counsel was deficient in not presenting his or her testimony during trial, counsel is not ineffective if that testimony would have been cumulative to other evidence presented, because such cumulative evidence removes a defendant's ability to establish prejudice."   <u>Nelson v. State</u>, 73 So. 3d 77, 89 (Fla. 2011).   The defense cross-examined the victims about their tenuous relationship with Appellant, and Sgt. Voyles testified that one victim, D.D., recanted her allegations

> after originally reporting sexual abuse in 2012.   Accordingly, the
> jury was made aware of the previous allegations through another
> method and counsel did not perform deficiently.

Abney, 317 So. 3d at 1254.

As indicated by the record references in brackets in the quoted portions of the trial court order and appellate opinion, above, the record supports the courts' findings regarding the testimony presented at trial.   The First DCA's adjudication on the merits is entitled to AEDPA deference under 28 U.S.C. § 2254(d).   *See* Harrison v. Richter, 562 U.S. 86, 98-105 (2011); Lee v. Comm'r, Ala. Dep't of Corr., 726 F.3d 1172, 1212 (11th Cir. 2013).

Based on the foregoing, Petitioner Abney has not demonstrated that the state courts' rejection of this ground involved an unreasonable application of clearly established federal law or that it was based on an unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d)(1)-(2). Accordingly, this ground should be denied.

## Conclusion

Petitioner Abney is not entitled to federal habeas relief.   It is respectfully **RECOMMENDED** that the § 2254 petition, ECF No. 1, be **DENIED**.

## <u>Certificate of Appealability</u>

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  Rule 11(b) provides that a timely notice of appeal must still be filed, even if the court issues a certificate of appealability.

Petitioner fails to make a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2); <u>Slack v. McDaniel</u>, 529 U.S. 473, 483-84 (2000) (explaining substantial showing) (citation omitted). Therefore, the Court should deny a certificate of appealability.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  The parties shall make any argument as to whether a certificate should issue by filing objections to this Report and Recommendation.

Leave to appeal in forma pauperis should also be denied.  *See* Fed. R. App. P. 24(a)(3)(A) (providing that before or after notice of appeal is filed,

the court may certify appeal is not in good faith or party is not otherwise entitled to appeal in forma pauperis).

### Recommendation

It is therefore respectfully **RECOMMENDED** that the Court **DENY** the § 2254 petition (ECF No. 1).   It is further **RECOMMENDED** that a certificate of appealability be **DENIED** and that leave to appeal in forma pauperis be **DENIED**.

**IN CHAMBERS** at Tallahassee, Florida, on February 27, 2024.

**S/   Martin A. Fitzpatrick**
**MARTIN A. FITZPATRICK**
**UNITED STATES MAGISTRATE JUDGE**

### NOTICE TO THE PARTIES

**Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2).   A copy of the objections shall be served upon all other parties.   A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.   Fed. R. Civ. P. 72(b)(2).   Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control.   If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a Report and Recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.   See 11th Cir. R. 3-1; 28 U.S.C. § 636.**